Matthew Campbell, on behalf of Larissa and Brian Waln, the plaintiff appellants in this matter. I would like to reserve one minute for rebuttal. Your Honors, Larissa wished to express her academic achievement from a religious perspective at her graduation ceremony, as other students were permitted to do. The Supreme Court recently clarified and confirmed that this type of expression and practice is doubly protected by both the free exercise clause and the free speech clause in the Kennedy v. Bremerton case. The Court has also made clear that denying religious speech or practice because it is religious or permitting comparable secular activity but denying religious activity are both subject to strict scrutiny. In this matter, Your Honors, the complaint plausibly shows that both Brian and Larissa and Larissa in particular have pled plausible claims for violation of the free exercise clause and the free speech clause. Counsel, let me interrupt. I have a hypothetical for you. I'm just trying to understand the contours of your claim and the principle that you'd like us to adopt. In my hypothetical, of course, this all happened in 2019, correct? Yes, Your Honors. So what if we had, what if your client instead had on the top of her cap, and this is, of course, in a stadium where people are viewing down, right? Yes. They're viewing down. They can see the tops of the caps. What if the top of the cap had said, keep America great, reelect President Trump, and the school had had the same policy and said, no, no, you can't, you know, we don't want political science. We're not having any, but nothing but, there's nothing on top of a cap. Would that, would that, would your, how would that, under your argument, is that, would that, would that plaintiff, if your plaintiff were making that argument, would that plaintiff prevail? Well, I think under that hypothetical, your argument where a student has keep America great again, reelect Trump, I think you'd have to look at several things, and one of the issues you'd want to analyze is what the forum the district has created under the free speech clause. And in this instance, the forum has been defined by the policies, and what Larissa has sought is the graduation ceremony where they've recognized their, where they have noted they are recognizing academic achievement. Well, counsel, isn't, isn't your claim limited to religious speech and the religion clause? I mean, it seems to me more akin, hypothetically, to a young woman who wants to wear a hijab over her cap, and not political speech. No, your honor, I do believe that under the free speech clause, once the government has opened up the forum, in this case, to allow expressions of academic achievement, the denying that same expression from a religious viewpoint is also viewpoint discrimination under the free speech clause. So I do believe that as the court confirmed in Kennedy, these types of expressions and practices are protected under both the free speech clause, but also the free exercise clause. And there are numerous tests under each to analyze, you know, whether there has been a violation or a plausible violation in this case. And I think going back to the, to the, your hypothetical, your honor, Judge Baker, in that instance, the confines of the forum would be perhaps limited such that that doesn't recognize academic achievement. It's not an expression of academic achievement. And in particular, in this case, from a religious viewpoint, and so it's outside the confines of the forum that has been created. It's a, it's an expression of speech, and so let me give you another, what about God is pro-life, which would be a combination of both, you know, religious and political expression. If that was on top of a cap, how would that fare? Sure. I think that's a closer case. But again, because the forum was opened up for, as the district court and the school has recognized, to honor academic achievement. And when you look at the items that were permitted, the stoles and the cords that were expressions of various forms of academic achievement, I think that that's a closer case, but it perhaps would be outside the realm of what the forum was created for. I do believe, though, if the forum has been opened up such that there are other expressions besides, you know, the expression of academic achievement and honoring students for that purpose, then your second hypothetical is a much closer call and may be limited. I think it depends on how the forum has been defined and the contours of the forum, but also under the free speech clause, under the free exercise clause, I think you'd have to look at, see whether or not that's comparable secular activity. And in your second case, I think that it arguably, in your second hypothetical, I think it arguably would be, but again, it would, it would demand undertaking an analysis to see whether or not that is indeed comparable activity. So let me ask you this. Is there, as I understand it, it's the district policy that there can be no modification whatsoever to the top of the cap. Is that correct? Yes, Your Honor. None at all. And so why isn't this just a generally applicable policy? Well, I think analyzing it under the free exercise clause, Your Honor, there are several reasons why it's not generally applicable. First, you have to, the school district does allow comparable secular activity. And second- What's that? Such as? So in this instance, it would be the school has permitted various forms of stoles, cords, and other items that undermine the school's interest in a similar way that the beaded cap and feather would. Is it comparable? Actually, is it actually comparable, right? In other words, did she ask, for example, to put the feather on a stole, right? Did she ask to do that or did she ask to do it on a tassel or did she ask to do it on a cord? I mean, I don't believe she did, right? She was insistent upon using the cap. That's correct, Your Honor. She was. But I think when you look at the legal test for comparability, it analyzes whether or not the exemptions that have been granted undermine the school's interest in a similar way. And I think here, the cords, the stoles, the other items undermine the school's asserted interest in a similar way. So if you're looking at unity, because there are various different forms of stoles and cords, there's no unity amongst the class members. When you're looking at the sanctity of the ceremony, I would note sanctity is a definition of holiness. But I mean, when you look at all the interests that the school has put forward, they are all undermined by the exemptions that they are granted in a similar way that allowing the religious viewpoint would be. But aren't these exemptions? I mean, actually, as I understand it, the policy is that you wear school, you know, if you're an honor student, these aren't so much exemptions as these are the policy. You have a policy which is students who've achieved certain things academically or who have entered into or going into certain areas post-graduation, right, can, if they're going into the military or if they're, they've been admitted to a service academy, they're certain. But I think this is, isn't this, I mean, how do you characterize these as exemptions? I think under the test for comparability, you look to see if there's any comparable activity that's allowed, right? Any permitted secular activity that is allowed, that's comparable to the religious activity. And if it is, then it's not generally applicable. I think there's another reason it's not generally applicable as well because the school has allowed for individualized exceptions where the superintendent would have allowed an exception outside the policy for Larissa to have her feather over the gown under, as a piece of jewelry or under the robe that was outside of the written policy. So it did show that the district was permitting, would have permitted individualized exemptions at the school's discretion. But that's not an exception to the policy. That's just, it's completely different. It's outside the policy. And there's a difference between an exception to the policy and being outside the policy, and that's outside the policy. Well, I think the policy also indicated that there were no adornments allowed on the gown or cap, and this would have been an exception to that. Well, wearing it in her hair is not an adornment to the cap or to the crown, to the gown. Well, I think, Your Honor, what the district court found was it was not only in the hair, it was over the gown, and the only adornments that were permitted over the gown were the school-approved cords and stoles, and no other adornments or additions were permitted. Did she ask to wear it over the gown? No, Your Honor. I think they went to extreme lengths to explain why this was important and must be on the cap. Right. Right. And, Counsel, I did have a question. The policy here, because there are some photos in the record. There's the one photo, I remember, with the breast cancer awareness ribbon on the cap. Was the policy a school policy or a district policy? Your Honor, the court concluded that it was plausible that it was a school policy, and we don't disagree with that conclusion. It was noted in the district's letter to counsel that this was a district policy, and we don't disagree with the conclusion the district court made. Wait, now I'm confused. I thought this was alleged to be a district policy. Correct. Okay. So, if the other cap adornment was from another school within the same district, it would still constitute an exception to the policy of the district. You're right. Yes, Your Honor, I agree with that. I also believe that there are other facts that were alleged in the complaint that even within this school, other students were permitted to wear their cords and stoles and other items, and that the district would have permitted Larissa to have an exemption outside the policy, which would show that there were individualized exemptions at the discretion of the superintendent to allow individuals to wear and express different forms. Do you have any specific, I mean, your complaint didn't allege any specific examples of that Well, I think, Your Honor, what was in the complaint was, there was allegations in the complaint that the district would have permitted Larissa to wear her feather on her cap, or not on her cap, I apologize, over her gown or as other jewelry. If you look at the district court's findings at page 11 in the excerpts of record, page 147 in the record and page 161 in the record, they all show that the district would have allowed her to wear the feather over her gown or as other jewelry as well. Right, but these aren't findings, right? This is the district court is reviewing, we're in a 12B6 posture. And we have de novo review, of course, so what the district court said doesn't buy us. This is not factual. This is a question. We're reviewing the sufficiency of the complaint. Sure. Correct, Your Honor. And in the complaint, excerpts of record, page 147, page 161, it did note that the district would allow her to wear the feather in her hair as a necklace or as other jewelry. Right, but that's not an exemption to, I mean, I see that as outside the policy. The question is, there's no allegation in the complaint that the superintendent was granting exceptions to the policy regarding what's on top of the cap, correct? Well, outside of that one exemption for Larissa, there is no allegations in the complaint to that effect. You are correct, Your Honor. Well, there is an allegation in paragraph 133 that similarly situated high school graduates from the district were allowed to walk in their ceremonies even though their caps were adorned with a couturement expressing a particular point of view. So there is that allegation. That's right, Your Honor. I think that glows to the number of exemptions that were allowed, and I think when you're looking at whether or not something is comparable, if there is a similar secular activity that is permitted and it's comparable, then the policy would not be generally applicable. But the problem here is, this is paragraph 91, and it says, based on information belief, other students, this is ER 117, other students in the district had adorned graduation caps or were prohibited items in their person during the graduation ceremonies. Now, the problem with your case is that this is post-Iqbal, post-Twombly. Prior to those decisions, I mean, this obviously would work, right? But you've got to, you have to get past the possibility threshold to the plausibility threshold. And I'm not sure this is enough under that more strict pleading standard that we have under those two decisions. Well, I think, Your Honor, one of the issues that the district court did was narrow in on that one allegation. And I think when you look at the complaint in total, as Twombly would require you to look at all of the complaint, you'd have to look at the policy itself, which granted exemptions for scores and stoles. You'd have to look at the allegation that other students utilized the policy to wear cords and stoles. And then also, there were exemptions granted as well. I would reserve the balance of my time if there are other questions. And I'll give you a little bonus. We've been hitting you pretty hard. Thank you, Your Honor. Thank you, Judge Owens. May it please the court, my name is Charles Workin. I represent the Appalese. And I apologize again to the court for delaying your start. Oh, don't worry about that. I thought you took a full NBA timeout. No commercial breaks on the Ninth Circuit, sorry. We should think about that, though, with the YouTubers. Those YouTubers make a lot of money. We should maybe think about funding the YouTube stream, yeah, or something like that, I don't know. We could have a halftime ceremony. That's right. Well, credit me with the idea. You may proceed, Counsel. Thank you, Your Honors. As Judge Baker recognizes, the issue here is the sufficiency of the complaint to state a claim. Counsel, we have to take everything in this complaint as true, correct? Well, everything that is plausibly. And paragraph 133 says, without any prefatory hesitation, that similarly situated graduates were allowed to walk even though their caps were adorned with things that expressed non-religious views. So we must take that as true for this moment. I mean, maybe not at summary judgment, maybe somewhere down the road, but for the purpose of the complaint, that's a fact. The other thing I wanted to ask you about, though, it appears to me from paragraph 69, and there's another paragraph, that the superintendent, at least, thought that there was discretion here. You know, if I—well, there's also 58. When they met with the principal, the principal said, well, if I allow this, then I have to allow something else. And paragraph 69 is similar with the superintendent. If I allow this, you can put Pikachu on your hat. So I took that to be a statement on the part of your client that there was discretion, and they had a reason that, in their mind, was a very good reason for declining it. But do you agree that this is sufficient to show that there was discretion? Well, no, I do not agree. And I think that the point of what the superintendent was saying, as alleged in paragraph 69, is if we allow this, we have to allow everything or anything. And— Right. And the principal said something similar, but they're not saying, I have no discretion. They're saying, I don't want to exercise my discretion because it would open the door to too many other things. But not that they can't, that they won't. The policy does not apply for an exception. I mean, take a look at the policy. It is what it is. It says what is allowed, and that are stoles and cords and— Tassels. And medallions or medals. And it says what is not allowed, which is any adornment whatsoever on a cap. And we are only here talking about caps. Okay, and the complaint alleges that other students for non-religious reasons did adorn caps. And there's a photograph to that effect. So in that situation, isn't that—doesn't that become at least a plausible claim of viewpoint discrimination? No, I think—and let's talk about the one example that is given in this case is that of the student who appears to be wearing a breast cancer awareness sticker on a cap. That student is at another high school at a graduation— Within the district. That's right. It is within the district. And it's a district policy, correct? I think that— Excuse me, is it a district policy? I think that it is, yes. So it's the same district, the same defendant, not refusing entry to one student, but refusing entry to another. But we don't have an allegation here that makes any sense, that is plausible, that that student was permitted entry wearing that sticker on the cap. And if you look at the— That's the allegation. But the allegation— In paragraph 133, that is the allegation. The allegation isn't plausible when one looks at the photograph, because that seems to be a post-ceremony photograph with a student holding one cap—wearing one cap and holding another. There may be—you may be able to prove that, but 133 stands by itself, with or without the photograph. Let me ask you one more thing before I let you say the things that you were interested in saying, and that is the hypothetical that I pose to opposing counsel. What would the district do if a woman said, I can't wear a cap at all, I want to wear a hijab, because, you know, in my particular branch of Islam, that is what I must wear on my head. I cannot wear the thing that is—that the school wants me to wear. What would the district do? Well, in that case, as I understand, the student would be wearing something other than the cap. It would—the student wouldn't be—would not be adorning the cap. What if they wore that over the cap? I don't think that's possible, as I understand that bit of attire. Well, it's a hypothetical. Would you say no, even though it's a religious garment, recognized to be a religious garment? Does the policy require them to wear the hat, the cap? In lieu of, like, could—under this hypothetical, could the student wear the religious covering as opposed to the cap? I don't know if this—if the policy requires the wearing of the cap, which I don't recall that it does. I think, counsel, I mean, I think it squarely does. I mean, if someone said, I don't want to wear the cap, I want to wear a cone head. Well, no. You couldn't do that, right. So, okay, so we do know that there are rules regarding what you can wear on your head. And I didn't—I don't think anyone was allowed not to wear the cap. That would seem to be more disruptive than almost anything. So I think the answer to the question is you've got to wear a cap. The question is whether you can adorn it or not, correct? Okay. And, you know, I don't think the religious covering on the cap would be considered an adornment. You know, we're talking— Then why is this considered an adornment? Because the allegation is that this is a religious symbol that is essential to the religion. And, again, we don't know if that's true or not true until you get past the complaint. But that is the allegation here, that this is every bit as much a religious head covering as a kippah would be to an Orthodox Jew or as a hijab would be to a Muslim woman. And so we have to take that part of the complaint as true. And I'm struggling to figure out what the district thinks it would do in those other situations. Okay. If I may, the policy is neutral. It is not directed at some religious expression or activity or practice. It is neutral and it is of general application. So, you know, one could apply the policy to say you cannot adorn with anything religious or non-religious. You cannot put MAGA on your cap. Well, that may be true under the free speech analysis, but what about the free exercise clause? You're going to tell this Muslim woman that she can't come through graduation because she wants to wear a hijab? Well, you know, does that substantially burden a sincere religious practice? Is it not neutral? Is it not generally applicable? Those are the touchstones here. And you know, none of those... How does that square with the Supreme Court's recent decision at Kennedy? Well, Kennedy was a case where the policy or the directive of the district was directly aimed at a religious expression or activity. It wasn't neutral at all. I think Kennedy is of little application in this case except as to the lowering or the raising of the bar as to showing an establishment clause violation, which the decision below here doesn't depend upon. So, Kennedy is really of no moment here, and this case is very distinguishable from Kennedy in that the code here isn't directed at religious activity as the district's directives were in Kennedy. Counsel, even if your Iqbal and Twombly arguments get traction with us, I'm having a real problem with the district court's refusal to allow an amended complaint. It seems to me it's almost a per se abuse of discretion when a complaint is dismissed on Iqbal and Twombly grounds. You know, it's a very stringent standard, right? It's much more stringent than it used to be. And I'm not aware of almost, I mean, in every case I can think of, this circuit and other circuits has required that a district court at least give the plaintiff an opportunity to amend their complaint to satisfy that pleading standard. So, because the dismissal here wasn't based entirely on the legal standards, it was also based upon Iqbal and Twombly. And to me, that seems like almost a per se abuse of discretion. Well, Your Honor, there was no real request here to amend. That doesn't mean there wasn't a request. I mean, the district court had an obligation to stipulate, to provide for that in the order of dismissing the case. And to say that, I know you make the argument, well, they should have filed a motion for leave, but that would have been futile because the district court said that, well, I'm not going to grant any motion, I'm not going to allow any amendments. I don't think it would have been futile, and I don't think that the district court closed the door that firmly on it, as I recall the record in the court's order. I'll defer to your superior recollection. I may be off, but anyway, I'm very concerned about this.  And I will agree that it is often, it is rather common that on dismissal for failure to state a claim, a court will dismiss with leave to amend. But even when the court does not do so, you know, I think the litigant has some obligation to make a motion to amend to seek leave. And when they don't, they shouldn't be heard to argue that they weren't allowed to amend. Oh, I agree, but it's when the district court closes the door in advance, and I'm not sure that that applies. But that's right, we'll check the record on that. That was my recollection here. I thought that the last order was the order that thoroughly analyzed the claims. And I think I'm looking at ER 60, granting the motion to dismiss, state law claims are nothing, I don't see anything there regarding amendment. And I don't, frankly, your honors, I don't recall another order after that, that made such a statement that, you know, would. Well, I'm confused. There was a dismissal with prejudice of the 1983 claims, you said without prejudice. That's the, no, I was speaking to state law claims, or at least I meant to say in the next paragraph, the state law claims are dismissed without prejudice. So again, I think we have a policy here that is a general application, it's neutral. I think it passes constitutional muster under either free exercise or free speech. And you just can't come in and put anything on a cap at all. You couldn't come in, since we're in San Francisco, you couldn't come in and put a cityscape on the cap like beach blanket Babylon. But, counsel, if we believe paragraph 133, then the government policy fails the general applicability requirement by prohibiting religious conduct while permitting secular conduct, that is, that undermines the same interest, that's from the Kennedy opinion. So, if, if other students, the allegation is that other students were able to adorn their caps, and this one was not, so if that's the allegation, why doesn't that defeat the general applicability? Well, I think this is an allegation that isn't worthy of such weight or consideration. It's a naked, it's a bald statement. Well, that's what complaints can do. They used to be. It's pretty, well, it's pretty specific. It's about caps, and it's about what you can put on your caps. It's not just sort of generically vague of like, well, sometimes people get to do stuff that's not like this policy. It's pretty specific, and, and, and whether they can prove it is not before us. The only question is whether it's sufficient as a complaint. And I don't, I submit to you that that is, is not a plausible allegation, and as support for that, I would also point to the opening brief, which tries to bring in other photographs, and where are, where is? Well, that's fine. That can be, at summary judgment, you guys can argue over that. I guess it, it, you know, the, or maybe if they amended the complaint, but I'm not sure why it's not plausible to be, when it's specific. You think it's not plausible because you don't think it happened, but that seems to me to be premature. Well, I, it, it is so lacking in real content. You know, if, if it had happened, in fact, there'd be something more there. And also, consider this, that these students, whether at one high school or another, they were inspected upon entry, and nobody would be allowed in, just as Ms. Wallin was not allowed in with an adornment. Where is that in the complaint? Why should we accept that fact? That they were, I can't cite to you a particular paragraph, but I believe it is in this record, in this complaint. And we also know from this complaint that the seminary students who wanted to wear something were not allowed to do that either, which further underscores the fact that the policy was being enforced. It was not being, there were no exceptions being granted, such as are alluded to in 133. I see that my time is up. I've enjoyed our conversation. If there are other questions. All right. Thank you, counsel. Thank you. Let's go with two minutes. Thank you, your honors. A couple of quick points. I think just to follow up on the seminary students, since that was the last item raised, I think that what that shows is that is actually evidence that there is some hostility towards religious beliefs because the complaint only has allegations that two items or two individuals were denied an exemption or access to the graduation ceremony, and that was Larissa, who was seeking a religious exemption, and the seminary students who were likewise seeking an exemption. So I think that would show a lack of neutrality under the free exercise clause. And I hate to take more of your time, and Judge Owens will indulge me, but are there any allegations in the complaint that there were other requests for exemptions that were analogous to your client and to the seminarians, that is analogous in the sense that they were outside of the school, I mean activities that had no connection to the school, if you will, that were honored in some way by adornments? Well, I do think there was requests from, you know, under the policy, and what we've, you know, in what the school district doesn't dispute is that many different organizations were allowed to provide with their students with... But they're connected with the school, though. I mean, isn't that the difference? They're all connected with the school? Well, I think under Fruden, if you look at the dress code issue there, once they open the door to allow outside organizations to modify the dress code, then they've opened the door to allow anyone to do that for that viewpoint, right, and to deny it from a religious viewpoint would be... But do we have any outside organizations here? Well, I think the district does not dispute that AVID, DECA, U.S. Air Force were items that were permitted under the policy. Your Honor, I do think my time is up, so I'll... If you've got one last thing to say, go for it. I would just say that there were exemptions, and Larissa just sought to express her academic achievement from a religious viewpoint. Thank you, Your Honors. Thank you, Counsel. Thank you very much. Thank you both for your argument in this case. Also, I appreciate the reference to beach blanket Babylon. That's why I took my mother for her 50th birthday. I took her to beach blanket Babylon. Thank you, Your Honor.
judges: GRABER, OWENS, Baker